UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| NICHOLAS A. GLADU,<br><br>  Plaintiff<br><br>  v.<br><br>JEREMIAH MANNING,<br><br>  Defendant | Case No. 1:18-cv-00274-GZS |

**DEFENDANT JEREMIAH MANNING'S MOTION FOR SUMMARY JUDGMENT WITH INCORPORATED MEMORADUM OF LAW**

Pursuant to Fed. R. Civ. P. 56, Defendant Jeremiah Manning moves for summary judgment in his favor on Plaintiff's claim relating to the alleged denial of the ability to decontaminate following Plaintiff's exposure to chemical agents. As grounds therefor, Defendant states that there is no issue of material fact and that Defendant is entitled to judgment as a matter of law.

**MEMORANDUM OF LAW**

In this matter, Plaintiff Nicholas Gladu, an inmate incarcerated at the Maine State Prison, brought a complaint against seven defendants where he alleged, among other things, that his constitutional rights were violated when he was denied a shower following exposure to chemical agents. (Docket # 1.) Plaintiff also attempted to assert a class action on behalf of "all male prisoners housed at Maine State Prison who were or will be subject to exposure of chemical agents and then deprived of the opportunity to decontaminate by means of a shower and change of clothing." (Docket # 1.) Following the Court's review of Plaintiff's complaint and amended complaint, Plaintiff's class action allegations and other claims were dismissed, and one claim remains against Defendant Manning related to the alleged denial of the means by which to

1

decontaminate following Plaintiff's exposure to chemical agents. (Docket # 9, 13, 16.)

Plaintiff's remaining claim stems from an incident in February of 2018 where Plaintiff covered up the window in his cell door, threw his meal tray at a corrections officer, and refused to comply with orders to de-escalate the situation, ultimately leading a team of prison officials to extract Plaintiff from his cell. During that cell extraction, Plaintiff was exposed to two short bursts of chemical agents at approximately 11:50 AM that day. Plaintiff was then removed from his cell and offered medical assistance by the cell extraction team, but Plaintiff refused medical attention when a nurse arrived to evaluate him. Plaintiff was provided with a fresh set of clothing and he was moved to a new cell. Defendant Manning was not a member of that cell extraction team, and he first interacted with Plaintiff many hours later when he began his shift that evening. Approximately seven hours after Plaintiff was exposed to chemical agents, Plaintiff asked Defendant Manning for a shower as Defendant was conducting his rounds in the prison. Based on many considerations, including that Plaintiff did not appear to be in any distress or injured, Plaintiff had access to a sink with running water in his cell, and due to security and staffing concerns, Defendant advised Plaintiff that he could not afford Plaintiff with a shower at that time. Based on that isolated and limited interaction with Defendant Manning, Plaintiff Gladu claims that Defendant violated the Eighth and Fourteenth Amendments of the U.S. Constitution.

Defendant Manning is entitled to summary judgment for two reasons:

First, Defendant Manning did not violate Plaintiff's constitutional rights, as Defendant did not act with deliberate indifference to Plaintiff's serious medical needs when he denied Plaintiff's one-time request for a shower hours after Plaintiff had been exposed to chemical agents, where Plaintiff had previously refused medical attention, Plaintiff was housed in a cell with running water, and Plaintiff had been afforded the ability to decontaminate by other means. Moreover,

even assuming *arguendo* that Defendant violated Plaintiff's constitutional rights by refusing Plaintiff's one-time request for a shower, Defendant Manning is entitled to qualified immunity from Plaintiff's claims. Here, Plaintiff's alleged right to be afforded a shower by Defendant Manning as a means of decontamination was not clearly established, and an objectively reasonable corrections officer in Defendant's position would not have known that his conduct violated the law. Consequently, Defendant Manning should be granted summary judgment on Plaintiff's Eighth and Fourteenth Amendment claims.

Second, Defendant Manning is entitled to summary judgment on Plaintiff's claim for compensatory damages, as Plaintiff did not sustain a physical injury in this matter. Because federal law bars the recovery of compensatory damages in actions filed by prisoners without proof of a physical injury, Defendant moves for summary judgment on Plaintiff's claim for damages. Similarly, because Defendant Manning did not violate a constitutional right of Plaintiff, Plaintiff's request for equitable relief must also fail in this matter.

*Summary of Facts*

On February 11, 2018, Plaintiff Nicholas Gladu was an inmate incarcerated at the Maine State Prison in the Special Management Unit ("SMU"), a unit designed to house high-risk inmates. Defendant's Statement of Material Facts ("DSMF") ¶ 2-3, 5. In February 2018, Defendant Manning was employed as a Correctional Sergeant at the Maine State Prison, but he has since been promoted to Correctional Captain. DSMF ¶ 1. At approximately 10:10 AM on that date, Sergeant Perry responded to the Special Management Unit for a report that Plaintiff Gladu and another inmate in the cell next to Plaintiff had covered up their respective windows in their cell doors. *Id.* ¶¶ 7-8. Inmates are not permitted to cover up their cell windows, as it prevents staff from being able to see inside the cell, which can lead to dangerous situations. *Id.* ¶ 8. During a cell extraction

3

of the other inmate, Plaintiff Gladu uncovered his cell window and threw a meal tray at a corrections officer through his tray slot, hitting the officer with the tray. *Id.* ¶¶ 9-10.

After extracting the other inmate from his cell, shortly before 11:50 AM, the cell extraction team returned to the SMU and went to Plaintiff's cell in order to move Plaintiff to a cell with a security tray slot to prevent Plaintiff from throwing items out of the tray slot. *Id.* ¶¶ 11-12. Sergeant Perry ordered Gladu to come over to the tray slot and "cuff up" or submit to hand restraints. *Id.* ¶ 13. Gladu refused to comply with those orders and instead placed a plastic bag over his head. *Id.* Sergeant Perry again told Plaintiff to come over and "cuff up" or be "maced." *Id.* ¶ 14. Plaintiff did not comply with those orders and Sergeant Perry applied a short burst of chemical agents to Plaintiff's cell. *Id.* ¶¶ 14-15. Sergeant Perry then asked Plaintiff to "cuff up," but Plaintiff again did not do so. *Id.* ¶ 16. Sergeant Perry applied a second short burst of chemical agents, and Plaintiff then complied, took the bag off his head, and submitted to hand restraints. *Id.* ¶¶ 16-17.

Plaintiff was removed from his cell, pat searched, and escorted to another area of the Special Management Unit. *Id.* ¶¶ 18-19. During that escort, Plaintiff spit on a corrections officer and a spit mask was applied to Plaintiff. *Id.* ¶ 19. The cell extraction team asked Plaintiff if he wanted medical attention and Plaintiff said that he was refusing medical. *Id.* ¶ 20. A nurse came to the unit and Plaintiff refused medical care to the nurse. *Id.* ¶¶ 21, 32-33. During Plaintiff's escort to the SMU receiving area, the extraction team located a laundry bag concealed in the front of Plaintiff's pants that had an electric razor tied up inside and that was considered to be a makeshift weapon. *Id.* ¶ 22. In the receiving area of the SMU, Plaintiff was provided with a new set of clothing and he changed his clothes, but Plaintiff again refused to submit to hand restraints. *Id.* ¶¶ 23-24. Shortly thereafter, Plaintiff agreed to be taken to a new cell in the SMU, and Plaintiff was

escorted to a cell with a security tray slot. *Id.* ¶¶ 12, 24-25. The team removed Plaintiff's restraints and Plaintiff was not restrained in his cell. *Id.* ¶ 26.

Hours later, Defendant Manning arrived at the prison to begin his shift as night supervisor at approximately 6:00 PM. *Id.* ¶ 34. During a shift briefing that evening, Defendant learned that Plaintiff had been exposed to chemical agents earlier that day, but Plaintiff had refused to be seen by medical staff and had refused medical decontamination. *Id.* ¶¶ 35-36. Defendant Manning had not been involved in the cell extraction of Plaintiff. *Id.* ¶ 37. At about 7:00 PM, as Defendant was conducting his rounds in the SMU, Plaintiff asked Defendant Manning for a shower, but Defendant advised Plaintiff that he could not afford him with a shower at that time. *Id.* ¶¶ 39-40. Plaintiff began arguing with Defendant about what was required by policy, and Defendant Manning explained that security staff may provide a shower when no health care staff are available. *Id.* ¶¶ 40-42. However, because the Maine State Prison has 24-hour health care staff, decontamination is required to be completed by health care staff by policy. *Id.* ¶¶ 29, 41-42.

During this isolated interaction, Plaintiff did not say that he needed or wanted to be seen by medical, nor did Plaintiff ask Defendant for any towels, washcloths, or other items such as shampoo or soap. *Id.* ¶¶ 43-45. Plaintiff was argumentative and angry that Defendant would not provide him with a shower. *Id.* ¶¶ 40, 46. Defendant Manning did not see any signs or indications that Plaintiff was in any distress or injured, and Plaintiff only asked Defendant for a shower on this one occasion. *Id.* ¶¶ 47-48, 50-51, 53. At that time, Plaintiff had access to a sink with running water in his cell. *Id.* ¶ 49. Defendant Manning was not able to provide Plaintiff with a shower at that late hour for many reasons. *Id.* ¶¶ 53-56. First, inmates in the SMU often require greater resources to perform certain tasks including showers. *Id.* ¶¶ 6, 54. As a result, inmates in the SMU are offered showers on specific days during the daytime, generally around 7 or 8 AM in the

5

morning. *Id.* Further, this practice maintains order in the prison and is due to staffing and security reasons. *Id.* Defendant believed that if he escorted Plaintiff out of his cell for a shower, then he would have had to provide any other inmate in the SMU who wanted a shower with one at that time of day. *Id.* ¶ 55. Moreover, Defendant knew that Plaintiff had access to running water in his cell and Defendant did not see any signs that Plaintiff was injured or in any distress. *Id.* ¶¶ 49, 53. Nor did Plaintiff ask Defendant Manning for any medical attention. *Id.* ¶¶ 43-44.

In addition, Plaintiff had refused a medical assessment and medical care on February 11, 2018, immediately following his exposure to chemical agents. *Id.* ¶ 61. Although an inmate may submit "sick call slips" or written requests for medical services, Plaintiff did not submit a sick call slip to request medical care or services for decontamination or for any other reason related to the cell extraction incident on February 11, 2018. *Id.* ¶¶ 57-59. A few days later, Plaintiff was seen by the medical department on or about February 13, 2018, for an unrelated incident that occurred in his cell, and Plaintiff did not report any injuries related to the incident on February 11, 2018. *Id.* ¶¶ 62-63. Similarly, it was noted by medical staff that Plaintiff was not in any medical distress and that Plaintiff did not have any complaints during daily medical rounds in the SMU on February 11, 12, and 13, 2018. *Id.* ¶ 60. Finally, Plaintiff was offered but refused a shower on February 13, 2018. *Id.* ¶ 28.

## Summary Judgment Standard

"Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Cortes-Rivera v. Dep't of Corr. & Rehab. of Com. of Puerto Rico*, 626 F.3d 21, 26 (1st Cir. 2010). A non-moving party may "defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trialworthy issue persists." *Iverson v. City Of Boston*, 452 F.3d 94, 98 (1st Cir. 2006). A

nonmovant, however, "cannot rely on speculation to avoid summary judgment." *Medina-Rivera v. MVM, Inc.*, 713 F.3d 132, 136 (1st Cir. 2013); *see also Ahern v. Shinseki*, 629 F.3d 49, 58 (1st Cir. 2010) ("Conclusions that rest wholly on speculation are insufficient to defeat a motion for summary judgment.").

## Argument

**I. Defendant Manning Did Not Violate Plaintiff's Constitutional Rights and Defendant Is Nevertheless Entitled to Qualified Immunity on Plaintiff's § 1983 Claim**

Plaintiff Gladu asserts a claim against Defendant Manning pursuant to 42 U.S.C. § 1983, alleging that Defendant did not afford Plaintiff the ability to decontaminate by any reasonable means in violation of the Eighth Amendment. First, Defendant submits that he did not violate Plaintiff's constitutional rights, and even assuming *arguendo* that Defendant's actions fell below the constitutional norm, Defendant is entitled to qualified immunity from Plaintiff's claims.

In a § 1983 claim, a government official may raise the defense of qualified immunity to seek "protection from civil damages liability for actions taken under color of state law." *Gray v. Cummings*, 917 F.3d 1, 9 (1st Cir. 2019). *See also Taylor v. Barkes*, __ U.S. __, 135 S. Ct. 2042, 2044 (2015). When such a defense is raised, the government official is entitled to qualified immunity "when his actions, though causing injury, did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 10 (quoting *Conlogue v. Hamilton*, 906 F.3d 150, 154 (1st Cir. 2018)) (quotation marks omitted). The protection afforded by qualified immunity "attaches to all but the plainly incompetent or those who knowingly violate the law." *Gray*, 917 F.3d at 9-10 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)) (quotation marks omitted).

To determine whether a government official is entitled to qualified immunity, a court must

engage in a two-part analysis:

> The court must determine whether the defendant violated the plaintiff's constitutional rights and then must determine whether the allegedly abridged right was "clearly established" at the time of the defendant's claimed misconduct.

*Gray*, 917 F.3d at 10 (quoting *Conlogue*, 906 F.3d at 154) (quotation marks omitted). The second part of the qualified immunity analysis has two components:

> First, the plaintiff must identify either "controlling authority" or a "consensus of cases of persuasive authority sufficient to send a clear signal to a reasonable official that certain conduct falls short of the constitutional norm.
>
> Second, the plaintiff must demonstrate that an objectively reasonable official in the defendant's position would have known that his conduct violated that rule of law.

*Gray*, 917 F.3d at 9-10 (quoting *Alfano v. Lynch*, 847 F.3d 71, 75 (1st Cir. 2017)) (citation and quotation marks omitted).

In this matter, Defendant Manning is entitled to summary judgment in his favor on Plaintiff's decontamination claim, as Defendant's actions did not violate Plaintiff's constitutional rights under the Eighth Amendment. Nevertheless, even assuming *arguendo* that Defendant did violate Plaintiff's constitutional rights, Defendant would be entitled to qualified immunity, as Defendant's conduct in denying Plaintiff's one-time request for a shower did not violate any clearly established law relating to the application of the Eighth Amendment. For these reasons, Defendant Manning respectfully moves for this Court to enter summary judgment in his favor.

**A. Defendant Manning Did Not Violate Plaintiff's Rights**

Defendant Manning first submits that the undisputed facts demonstrate that his conduct did not violate Plaintiff's constitutional rights where: Defendant learned that Plaintiff had been exposed to chemical agents earlier that day; Defendant was advised that Plaintiff had refused to be seen by medical staff and had refused medical decontamination; Plaintiff had access to running water in his cell; Plaintiff did not appear to be in any distress or injured; Plaintiff did not ask

Defendant for any medical attention or for any items to decontaminate himself; and Defendant's denial of Plaintiff's one-time request for a shower while Defendant was conducting rounds in the SMU was reasonable. Defendant Manning therefore asserts that he is entitled to summary judgment in his favor because he did not violate any constitutional right of Plaintiff. Further, even assuming Defendant's denial of Plaintiff's one-time request for a shower violated Plaintiff's constitutional rights, Defendant Manning would nevertheless be entitled to qualified immunity. Because the relevant constitutional analysis is substantially identical to the first prong of the qualified immunity analysis, Defendant's arguments are subsumed below.

With respect to the first part of the qualified immunity analysis, this Court must "determine whether the defendant violated the plaintiff's constitutional rights." *Gray*, 917 F.3d at 10 (quoting *Conlogue*, 906 F.3d at 154) (quotation marks omitted). In the context of an Eighth Amendment claim, the relevant inquiry is whether Defendant Manning violated Plaintiff's constitutional right to be free from cruel and unusual punishment.

The Eighth Amendment guarantees an individual the right to be free from cruel and unusual punishment. U.S. Const. amend. VIII; *see Ingraham v. Wright*, 430 U.S. 651, 664-71 (1977) (discussing the history and parameters of the Eighth Amendment's prohibition on cruel and unusual punishment). It is well-established that "[a]fter incarceration, only the 'unnecessary and wanton infliction of pain,' constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Ingraham*, 430 U.S. at 670 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (citation omitted)); *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."). In general, a plaintiff may assert a claim under the Eighth Amendment "by challenging either: (1) the deliberate indifference to serious medical need;

9

(2) the specific conditions of confinement; or (3) the excessive use of force."[1] *McNeeley v. Wilson*, 649 F. App'x 717, 721 (11th Cir. 2016) (unpublished).

As the Supreme Court recognized in *Estelle v. Gamble*, 429 U.S. 97 (1976), "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain [] proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation and quotation marks omitted). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106; *see also Kosilek v. Spencer*, 774 F.3d 63, 82 (1st Cir. 2014) ("Therefore, to prove an Eighth Amendment violation, a prisoner must satisfy both of two prongs: (1) an objective prong that requires proof of a serious medical need, and (2) a subjective prong that mandates a showing of prison administrators' deliberate indifference to that need.").

First, the objective prong "requires that the need be one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Kosilek*, 774 F.3d at 82 (quotation marks omitted). Second, the second deliberate indifference prong "requires evidence that the failure in

---

[1] Although it is not clear whether Plaintiff's Eighth Amendment claim is based on an allegation that Defendant Manning was deliberately indifferent to Plaintiff's serious medical needs, deliberately indifferent to Plaintiff's conditions of confinement, or that Defendant used excessive force against him, it appears that Plaintiff's decontamination claim relates to an allegation of deliberate indifference to Plaintiff's serious medical needs.

In any event, Defendant would nevertheless be entitled to summary judgment because the undisputed facts demonstrate that Defendant did not use excessive force on Plaintiff or act "maliciously and sadistically for the very purpose of causing harm" in denying Plaintiff's one-time request for a shower. *Staples v. Gerry*, 923 F.3d 7, 13 (quoting *Whitley*, 475 U.S. at 320–21); DSMF ¶¶ 34-56. Similarly, nor can Plaintiff establish a conditions of confinement claim, as Defendant did not disregard a known and excessive risk to Plaintiff's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."); *see also Jones v. Wetzel*, 737 F. App'x 61, 64 (3d Cir. 2018) (unpublished) ("Next, [plaintiff] could not state a conditions of confinement claim against [defendants] for failing to provide him with hygiene products on a single occasion because the deprivation did not amount to an Eighth Amendment violation."); *Rodriguez v. Elmore*, 407 F. App'x 124, 126 (9th Cir. 2010) (unpublished).

treatment was purposeful," and may "be exhibited by a 'wanton disregard' to a prisoner's needs," but "such disregard must be akin to criminal recklessness, requiring consciousness of impending harm, easily preventable." *Id.* at 83 (citation and quotation marks omitted); *see also Watson v. Caton*, 984 F.2d 537, 540 (1st Cir. 1993) ("The obvious case would be a denial of needed medical treatment in order to punish the inmate."). However, in this deliberate indifference analysis, "security considerations inherent in the functioning of a penological institution must be given significant weight," and "even a denial of care may not amount to an Eighth Amendment violation if that decision is based in legitimate concerns regarding prisoner safety and institutional security." *Kosilek*, 774 F.3d at 83. Further, "prison administrators need only have responded reasonably to the risk." *Id.* at 84 (citation and quotation marks omitted).

In this matter, the record evidence demonstrates that Defendant Manning was not deliberately indifferent to Plaintiff's serious medical needs. First, Plaintiff cannot establish proof of a "serious medical need," as the record demonstrates that Defendant Manning did not observe any signs or indications that Plaintiff was injured or in any distress, and Plaintiff did not request medical attention or say that he needed or wanted to be seen by medical staff. (DSMF ¶¶ 43-45, 47-48, 59.) Plaintiff had previously refused a medical assessment and medical care on February 11, 2018, and Plaintiff did not submit any requests or "sick call slips" for medical services related to this incident. *Id.* ¶¶ 59, 61. Further, medical records demonstrate that Plaintiff was noted as having no complaints and as being in no acute distress on February 12, 2018. *Id.* ¶ 60. Moreover, Plaintiff was evaluated by medical staff on or about February 13, 2018, and Plaintiff did not report any injuries related to the cell extraction incident on February 11, 2018. *Id.* ¶ 63. Therefore, because Plaintiff cannot establish that he was suffering from a medical need that was "so obvious that even a lay person would easily recognize the necessity for a doctor's attention," Defendant

Manning is entitled to summary judgment in his favor. *Kosilek*, 774 F.3d at 82 (quotation marks omitted).

Second, because Defendant Manning did not purposefully deny Plaintiff treatment or medical care, and because Defendant's denial of Plaintiff's one-time request for a shower was reasonable, Plaintiff cannot establish that Defendant acted with deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 845 (1994) ("Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause."). Defendant denied Plaintiff's one-time request for a shower at approximately 7 PM based on a multitude of reasonable factors, none of them evidencing a "wanton disregard" to Plaintiff's serious medical needs. *Kosilek*, 774 F.3d at 83.

Defendant had been advised that Plaintiff had been exposed to chemical agents, but Plaintiff had refused medical decontamination. DSMF ¶¶ 35-36. Plaintiff asked Defendant for a shower while Defendant was conducting rounds in the SMU, and when Defendant denied the request, Plaintiff became angry and argumentative with Defendant. *Id.* ¶¶ 39-40, 46. Plaintiff argued that Defendant was required by policy to provide Plaintiff with a shower, but Defendant explained that policy provided that decontamination was to be completed by health care staff unless medical staff are not available, but that the prison had 24-hour health care staff available. *Id.* ¶¶ 41-42. Plaintiff did not ask Defendant to call the medical department, nor did Plaintiff say that he needed or wanted to be seen by medical staff at the prison. *Id.* ¶¶ 43-33. Further, Plaintiff was housed in a cell with a sink with running water, Plaintiff was not restrained in any way, and Defendant did not see any signs of injury to Plaintiff. *Id.* ¶¶ 26, 49, 53. Because showers were performed on certain dates and times by staff in the SMU, Defendant was also concerned that if he had afforded Plaintiff a shower, then he would have had to provide a shower to any other inmate

in the SMU that wanted one that night in order to maintain order in the prison. *Id.* ¶ 54-55. Further, the provision of showers to inmates in the SMU often require greater resources and staffing, and Defendant noted that there was limited staffing available on the night shift. *Id.* ¶ 6, 54, 56. Therefore, Defendant's denial of Plaintiff's request for a shower was reasonable based on the above considerations, including security and staffing considerations and the lack of apparent injury to Plaintiff, and Defendant did not act with deliberate indifference to Plaintiff's medical needs.

In summary, because Defendant did not violate Plaintiff's constitutional right to be free from cruel and unusual punishment, summary judgment should be entered in Defendant's favor. *See Mutty v. Anderson*, No. CV-08-178-B-W, 2009 WL 578550, at *5 (D. Me. Mar. 4, 2009) (granting summary judgment for a defendant corrections officer who sprayed the plaintiff inmate with pepper spray but had "very little involvement with the response to the aftermaths of the macing," and concluding that plaintiff failed to establish a deliberate indifference claim); *see also Johnson v. Chambers*, 487 F. App'x 693, 696 (3d Cir. 2012) (unpublished) ("Given that [plaintiff] did not present any evidence beyond his own bare allegations that he was improperly exposed to pepper spray, he failed to create a genuine issue of material fact as to that issue."). For these reasons, the Court should enter summary judgment for Defendant.[2]

### B. Any Violation of Plaintiff's Rights Was Not Clearly Established

With respect to the second aspect of the qualified immunity analysis, the Court must determine "whether the allegedly abridged right was 'clearly established' at the time of the

---

[2] Although Plaintiff appears to be asserting a Fourteenth Amendment claim against Defendant on the basis of the same allegations relating to Plaintiff's Eighth Amendment claim, because Plaintiff is not a pretrial detainee, it appears that the relevant constitutional analysis is under the Eighth Amendment. *See Ruiz-Rosa v. Rullan*, 485 F.3d 150, 155 (1st Cir. 2007) ("The Fourteenth Amendment provides at least as much protection for pretrial detainees as the Eighth Amendment provides for convicted inmates."). Nevertheless, because the record demonstrates that Defendant did not violate Plaintiff's rights under the Eighth Amendment, Defendant would also be entitled to summary judgment on Plaintiff's Fourteenth Amendment claim as well. *Id*. ("Generally, the standard applied under the Fourteenth Amendment is the same as the Eighth Amendment standard.").

defendant's claimed misconduct." *Gray*, 917 F.3d at 10 (quoting *Conlogue*, 906 F.3d at 154) (quotation marks omitted). Because Plaintiff's allegedly abridged right to decontamination by means of a shower was not clearly established, Defendant is entitled to qualified immunity. *See Hernandez v. Wood*, No. 13-CV-05633-YGR, 2016 WL 1070663, at *22 (N.D. Cal. Mar. 18, 2016), aff'd sub nom. *Hernandez v. Woods*, 731 F. App'x 643 (9th Cir. 2018) ("For Plaintiff, as for other inmates, the Eighth Amendment does not grant a right to a specific course of conduct (i.e., there is no Eighth Amendment right to a lengthy decontamination shower, just as there is no Eighth Amendment right to have one brand of pain reliever instead of another with comparable properties)."); *see also Al-Mujahidin v. Harouff*, No. 9:14-CV-1266-BHH, 2015 WL 5159065, at *6 (D.S.C. Sept. 2, 2015) ("To be clear, the issue is not whether the defendants allowed the plaintiff to decontaminate in the shower, but whether they allowed him to decontaminate at all. Recognizing that chemical munitions are often used in volatile and dangerous situations involving high-risk inmates, the Court declines to dictate to prison officials the place or manner in which an inmate should be allowed to decontaminate.").

Additionally, Defendant Manning submits that Plaintiff cannot demonstrate that there is sufficient authority to "send a clear signal" to a reasonable official that Defendant's conduct falls below the constitutional norm, and further that "an objectively reasonable official" in Defendant's position "would have known that his conduct violated that rule of law." *Gray*, 917 F.3d at 9-10 (quoting *Alfano v. Lynch*, 847 F.3d at 75). Because Plaintiff asked Defendant for a shower during one interaction approximately seven hours after Plaintiff had been exposed to chemical agents, and Plaintiff did not appear to be injured or in any medical distress, Defendant would not have known that his conduct in denying Plaintiff's request for a shower violated the law, especially in light of the decontamination policy in effect. DSMF ¶¶ 41-42. *See J W by & through Tammy*

*Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1263 (11th Cir. 2018) ("Recognizing that cases from other lower federal courts cannot create clearly established law for qualified immunity purposes, we note, as well, that the other chemical spray cases we have found—mostly in the prisoner/denial of medical care context—have arisen in different factual scenarios and do not set out definitive or minimum constitutional standards for the decontamination of those who suffer from exposure."). In summary, the record demonstrates that Defendant acted reasonably in denying Plaintiff's request, and therefore his actions are entitled to qualified immunity.

**II. Defendant Manning Is Entitled to Summary Judgment on Plaintiff's Damages Claim**

Pursuant to the Prison Litigation Reform Act, a prisoner's relief in federal civil actions is limited. *See* 42 U.S.C.A. § 1997e(e). Specifically, section 1997e(e) provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).

42 U.S.C.A. § 1997e(e).

The First Circuit has yet to decide whether the limitation in section 1997e(e) on damages applies to constitutional claims. *See Kuperman v. Wrenn*, 645 F.ed 69, 73 n.5 (1st Cir. 2011). However, this Court has addressed the application of section 1997e(e) in the context of a prisoner's federal action alleging violations of the First Amendment and the Religious Land Use and Institutionalized Persons Act. *Robinson v. Landry*, No. 2:15-CV-58-DBH, 2015 WL 4077297, at *2 (D. Me. July 6, 2015). In the *Robinson* matter, this Court dismissed a prisoner's claim for damages where the prisoner sought relief for anxiety and emotional distress but had not alleged a physical injury. *Id.*; *see also Schoff v. Fitzpatrick*, No. 2:16-CV-00609-NT, 2018 WL 1185499, at *9 (D. Me. Mar. 7, 2018), *report and recommendation adopted*, No. 2:16-CV-609-NT, 2018

WL 4473093 (D. Me. Sept. 18, 2018) (where this Court reasoned that although the First Circuit had not decided whether section 1997e(e) barred compensatory damages for constitutional claims, "persuasive authority suggests that Plaintiff cannot recover monetary relief based on Plaintiff's mental or emotional distress.").

In this matter, Plaintiff has not alleged a physical injury sufficient to withstand summary judgment on the issue of damages. *See Jacoby v. Baldwin Cty.*, 596 F. App'x 757, 767 (11th Cir. 2014) (unpublished) (affirming summary judgment for defendant on plaintiff's deliberate indifference claim based on an alleged "decontamination delay" of where there was "no allegation that the pepper spray or the delay in decontamination caused him injury, and no evidence in the record otherwise indicates that he suffered any harm as a result of the pepper spray"); *see also Allen v. Bosley*, 253 F. App'x 658, 660 (9th Cir. 2007) (unpublished). Pursuant to section 1997e(e), Defendant submits that Plaintiff's recovery is limited as he has not established that a physical injury occurred. For the above reasons, Defendant respectfully moves for summary judgment on Plaintiff's claim of damages, as there exists no genuine issue of material fact.

### III. Plaintiff Is Not Entitled to Equitable Relief

Plaintiff also appears to seek equitable relief in the form of an injunction and a declaratory judgment against Defendant in this matter. (Docket # 1, 12.) Because Defendant did not violate Plaintiff's constitutional rights, as argued more extensively above, Plaintiff's request for equitable relief must fail. *See Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (quoting *United Public Workers of American (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947) (holding that because federal courts "do not render advisory opinions," there must exist "concrete legal issues, presented in actual cases, not abstractions" for the court to adjudicate a constitutional issue and afford declaratory relief); *see also Soto-Padro v. Pub. Bldgs. Auth.*, 675 F.3d 1, 8–9 (1st Cir. 2012) (holding that where the

plaintiff's constitutional claims had been "correctly tossed" on summary judgment, the plaintiff "had no basis for any relief at all against the defendants, let alone declaratory and injunctive relief"); *Lopez v. Garriga*, 917 F.2d 63, 70 (1st Cir. 1990) (holding that "once the jury rejected plaintiff's constitutional claim, he was left without any sound basis for equitable redress").

As Defendant did not violate Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment, no "substantial controversy" exists to warrant the issuance of a declaratory judgment, and the award of such a judgment would afford no meaningful relief to Plaintiff. *Golden*, 394 U.S. at 108 (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941) (quotation marks omitted) ("Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy any reality to warrant the issuance of a declaratory judgment."); *see also Union de Empleados de Muelles de Puerto Rico, Inc. v. Int'l Longshoremen's Ass'n*, 884 F.3d 48, 58 (1st Cir. 2018) ("A declaratory judgment is often a means to an end rather than an end in and of itself, as its purpose is to determine the rights and obligations of the parties so that they can act in accordance with the law.").

Further, to the extent Plaintiff seeks injunctive relief against Defendant, his request is barred by 18 U.S.C. § 3626, which prevents a court from granting or approving "any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C.A. § 3626. Therefore, Defendant submits that he is entitled to summary judgment on Plaintiff's requests for equitable relief in this matter.

## Conclusion

For the reasons stated above, Defendant Manning respectfully requests that the Court enter summary judgment in his favor as to Plaintiff's claim.  In addition, Defendant moves for summary judgment on the issue of damages and respectfully submits that Plaintiff's claim for damages is barred by federal law.  Moreover, Defendant is entitled to summary judgment on Plaintiff's claim for equitable relief in this matter.

Respectfully submitted,

AARON M. FREY
Attorney General

November 12, 2019            /s/ Alisa Ross
                             Alisa Ross, Bar No. 4688
                             Assistant Attorney General
                             Office of Attorney General
                             6 State House Station
                             Augusta, ME  04333-0006
                             Tel. (207) 626-8800
                             *Alisa.Ross@maine.gov*

## NOTICE

Plaintiff's attention is directed to Local Rule 56(c), which requires that a party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts.  The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts in conformance with the requirements of Local Rule 56(c).  Facts contained in the moving party's statement of material facts may be deemed admitted unless properly controverted.

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2019, I electronically filed this document with the Clerk of Court using the CM/ECF system, which will send notice of filing to any and all registered counsel of record, and that I caused one copy of this filing to be served upon Nicholas A. Gladu, Maine State Prison, 807 Cushing Road, Warren, ME 04864 by having the same deposited in the United States Mail, postage prepaid.

November 12, 2019                               /s/ Alisa Ross
                                                          Alisa Ross, Bar No. 4688
                                                          Assistant Attorney General
                                                          *Alisa.Ross@maine.gov*